# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **LEWIS ELLIS ARNETTE,** | ) | Civil Action No. 7:12-cv-00519 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **ARMOR CORRECTIONAL** | ) | |
| **HEALTH SERVICES, INC.,** *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Lewis Ellis Arnette, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth Amendment by denying him adequate medical treatment related to his ulcerative colitis.[1] Defendants Armor Correctional Health Services, Inc. ("Armor Health") and Dr. Khairul Emran have filed motions to dismiss.[2] Arnette has filed responses to both defendants' motions, and this matter is ripe for disposition.[3] Upon consideration of this action, I find that Armor Health's motion to dismiss should be granted and Dr. Emran's motion to dismiss should be denied.[4]

## I.

---

[1] Ulcerative colitis is an inflammatory bowel disease that causes long-lasting inflammation in part of the digestive track. *Ulcerative colitis, Definition*, Mayo Clinic, http://www.mayoclinic.com/health/ulcerative-colitis/DS00598 (last visited Sept. 17, 2013).

[2] Armor Health's motion is also filed as a motion for summary judgment in the alternative. However, as addressed herein, I will adjudicate Arnette's claim against Armor Health in its motion to dismiss.

[3] Defendants Dr. Emran and Armor Health also submitted replies to Arnette's responses to their motion to dismiss, arguing that that the court should not consider Arnette's response to the motions to dismiss because it was untimely. Defendants state that Arnette's response was due on March 18, 2013, but was not filed until March 25, 2013. A review of the record shows that Arnette's response was signed on March 14, 2013, and Arnette claims he gave the response to prison authorities on March 15, 2013. Arnette also filed a copy of an informal complaint in which a prison official from the mailroom indicates that the documents were mailed on March 15, 2013. Thus, defendants' timeliness argument is without merit as, according to the "prison mailbox rule," Arnette's reply brief was deemed filed on the date it was deposited in the prison mailing system, on March 15, 2013. *See Houston v. Lack*, 487 U.S. 266 (1988); *see also Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. Va. 1991).

[4] By ordered entered June 25, 2013, I granted Arnette's motion to voluntarily dismiss Cathy Wilcox-Hodgkins, R.N., as a defendant to this action and consequently dismissed her motion to dismiss as moot. *See* Docket No. 63.

Armor Health is the health care service provider at Coffeewood Correctional Center ("Coffeewood"), where Arnette is confined, and is responsible for managing and providing health care personnel and services. Dr. Emran is an employee of Armor Health and is the primary physician at Coffeewood.[5] Arnette claims that he suffers from ulcerative colitis and that the defendants failed to provide him with adequate medical treatment for his condition, including delaying the scheduling of an appointment with a gastroenterologist.

Arnette alleges that on July 12, 2010, he began experiencing "bloody flares" due to his ulcerative colitis. The next day, he filed a sick call request. On July 16, 2010, Dr. Emran examined Arnette and allegedly told him that he would schedule an appointment for Arnette with a gastroenterologist. Dr. Emran also prescribed a medication regimen and scheduled a follow-up appointment in two to three weeks. Arnette was seen by a nurse at a follow-up appointment on August 3, 2010, at which time he was prescribed a new medication regimen.

On October 25, 2010, after not hearing whether an appointment had been scheduled, Arnette filed an Informal Complaint inquiring as to the status of his gastroenterologist appointment. Arnette states that, at that point, he suffered "continuously since July 2010" with "severe stomach pain and bloody incontinence averaging twelve times a day." In response to this informal complaint, Arnette was told that an appointment was scheduled at the Medical College of Virginia ("MCV") for the gastrointestinal clinic. Arnette claims that he had repeatedly notified the medical department, both verbally and in writing, that the "long, jarring

---

[5] Dr. Emran, although an employee of Armor Health, can be sued under § 1983 as a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 54 (1988) (A private physician under contract with a state to provide medical services to prison inmates acts under color of state law when treating a prisoner); *see also Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. Va. 1994) (A physician who treats a prisoner acts under color of state law even though there was no contractual relationship between the prison and the physician).

ride of nearly two hours" to MCV would cause him to "defecate on himself several times" during the trip.

Believing that Armor Health "would regularly schedule appointments at MCV to discourage inmates from requesting costly outside professional visits," on November 3, 2010, Arnette filed a Regular Grievance to the Warden at Coffeewood. On December 1, 2010, the Warden responded, indicating that Arnette's grievance was founded and that a local appointment was scheduled and would "occur very soon."[6]

As of January 2, 2011, Arnette still had not seen a gastroenterologist. Arnette claims that he still suffered "severe stomach pain and bloody incontinence," which affected his work performance, diet, and sleep. Arnette filed an Informal Complaint on January 2, 2011, inquiring as to the status of his medical appointment. The next day, he received a response stating "you have an ap[pointmen]t soon."

On January 7, 2011, Arnette filed a Regular Grievance to the Warden, indicating that he still had not seen a gastroenterologist and inquiring as to the delay. While awaiting a response from the Warden, on February 2, 2011, Arnette's medications expired. Arnette filed a medical request form, informing the medical department that his medication had expired, that he had not seen the doctor in over six months, and that he was still waiting to see a specialist. In response to the medical request, Arnette was informed that his appointment "with [a] specialist is scheduled" and that he would "be going within the month." The response also indicated that Arnette's medications had all been renewed, with the exception of one medication which Arnette

---

[6] Arnette appealed this response to the VDOC Director of Health Services who determined that his grievance was founded and stated that medical staff would be "notified on the importance of offender scheduling and documentation."

previously had requested be discontinued. On February 8, 2011, the Warden responded to Arnette's Regular Grievance, deeming it "founded" and stating that Arnette's gastroenterologist appointment had been rescheduled due to transportation issues, but that a local appointment was rescheduled "for the very near future."

On February 9, 2011, the medical department attempted to take Arnette to an appointment at MCV. Arnette objected and showed medical personnel copies of his grievance responses which indicated that he would be taken to a local appointment. Arnette signed a refusal form, indicating his refusal to go to MCV for the scheduled appointment.

Also on February 9, 2011, Arnette appealed the Warden's response to his January 7, 2011 grievance to the Virginia Department of Corrections ("VDOC") Health Services Director, informing him of what had and had not happened with the scheduling of his appointment to see a gastroenterologist. In addition, Arnette filed an Informal Complaint concerning the medical department's attempted transport to MCV. In response to his Informal Complaint, Arnette was informed that "MCV was able to accommodate [him] with an app[ointment]t" and that "MCV and other gastroenterologists are of the same approximate distance."

On February 18, 2011, Arnette filed another Informal Complaint, challenging the response which indicated that "MCV and other gastroenterologists are of the same approximate distance," because another inmate had recently seen a gastroenterologist only ten miles away. In response, Arnette was informed that he was "scheduled to see a gastroenterologist in the near future."

On March 3, 2011, the VDOC Director of Health Services responded to Arnette's February 9, 2011 appeal and stated that Arnette's grievance was founded and that the medical

department would "be reminded on the importance of providing offender appointments as recommended."

On March 10, 2011, Arnette was taken to a gastroenterologist in Warrenton, Virginia.[7] The gastroenterologist assessed Arnette's ulcerative colitis as "chronically active" and "uncontrolled," prescribed a 6-week steroid treatment, ordered blood-work, and scheduled a two-month follow-up appointment.

Arnette asserts the following claims against the defendants, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, all occurring during the time period between October 25, 2010 and March 10, 2011:

> Claim 1: Armor Health, as part of its business model, "deliberately executed a less efficacious treatment plan" for Arnette by hiring and failing to supervise Dr. Emran.
>
> Claim 2: Dr. Emran refused to see Arnette or provide a solution to "ease his suffering" causing Arnette to experience "chronic and serious pain daily."

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94

---

[7] The gastroenterologist's office that Arnette was taken to was approximately 32.8 miles from Coffeewood. Google Maps, http://goo.gl/maps/9FBe3 (last visited Sept. 17, 2013). MCV is approximately 84.8 miles from Coffeewood. Google Maps, http://goo.gl/maps/ePaS8 (last visited Sept. 17, 2013).

(2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (*quoting Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A

*pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (*quoting Sado v. Leland Memorial Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

### III. Armor Health

Arnette alleges that Armor Health, as part of its business model, "deliberately executed a less efficacious treatment plan" for Arnette by hiring and failing to supervise defendant Dr. Emran. However, Arnette's allegations are insufficient to state a constitutional claim against Armor Health and, therefore, I will grant defendant Armor Health's motion to dismiss.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v .Atkins*, 487 U.S. 42, 48 (1988); *see also Philips v. Pitt Cnty. Mem'l. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "[A] private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 728 (4th Cir. 1999). A policy is a formal statement by the private corporation. *See Bardes v. Magera*, C.A. No. 2:08-CV-487-PMD-RSC, 2009 U.S. Dist. LEXIS 91356, 2009 WL 3163547, at *30 (D.S.C. Sept. 30, 2009) (citing *Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

Arnette cites no written or formal policy of Armor Health that violated his constitutional rights. Instead, he merely alleges "upon information and belief[,] that [Armor Health] would regularly schedule appointments at MCV to discourage inmates from requesting costly outside professional visits." With his reply brief, Arnette submits a document (Exhibit G)

7

which he states "refers to the existence of a policy to control cost by referring patients to a contracted facility." The document, which appears to be informational or promotional material produced by Armor Health, refers to Armor Health's ability to provide "efficient delivery of necessary care" as well as reducing the necessity of off-site care. However, the document submitted does not support Arnette's claim that Armor Health had a policy designed to discourage inmates from requesting outside professional visits. Moreover, Arnette has failed to allege facts showing any clear, consistent pattern of inmates being discouraged from requesting outside professional visits. *See Broyles v. Corr. Med. Servs.*, No. 08-1638, 2009 U.S. App. LEXIS 5494, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) ("[B]are allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief."); *Page v. Kirby*, 314 F.Supp.2d 619, 622 (N.D. W. Va. 2004).

Arnette also appears to allege a claim for supervisory liability against Armor Health, arising from the alleged constitutional violations by Nurse Wilcox-Hodgkins and defendant Dr. Emran. However, there is no *respondeat superior* liability under § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge*, 550 F.2d at 928. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. *Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct

8

that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).[8] Arnette fails to allege facts sufficient to support these required elements for supervisory liability as to Armor Health. Accordingly, I will grant defendant Armor Health's motion to dismiss.

### IV. Dr. Emran

Arnette alleges that Dr. Emran was deliberately indifferent to Arnette's ulcerative colitis and the pain and suffering Arnette's condition caused. I find that Arnette's complaint, as amended, states a plausible claim for relief against Dr. Emran and, therefore, I will deny Dr. Emran's motion to dismiss.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F.Supp. 487, 492 (E.D.Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize

---

[8] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Shaw*, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id*.

the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard and, thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105-06. Deliberate indifference can be displayed, however, through the response of prison doctors and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment. *Id.* Where the alleged constitutional violation is that medical personnel delayed treatment of a serious medical need, the plaintiff must also demonstrate that the delayed medical treatment caused the plaintiff "substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 166-67 & n.13 (explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm'" (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1205 (10th Cir. 2000))). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); *see Smith*, 589 F.3d at 738-39 (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim). *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases); *see Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cnty. Corr. Ins'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Arnette alleges that during the period of October 25, 2010 through March 10, 2011, while suffering "severe stomach pain and bloody incontinence," Dr. Emran "refused" to see or examine Arnette and failed to "offer any solution to ease [Arnette's suffering] and keep [Arnette's] issues from significantly affecting his daily activities . . . ." Arnette argues that Dr. Emran's inaction constitutes a denial of adequate medical care in violation of the Eighth Amendment.

There is no dispute that Arnette's ulcerative colitis constitutes a serious medical need. Dr. Emran knew of the serious medical need because he examined Arnette on July 16, 2010, prescribed medication for Arnette's symptoms, and referred Arnette to a gastroenterologist. Arnette did not see a gastroenterologist until nearly eight months after Dr. Emran examined him. Arnette filed numerous informal complaints, grievances, and appeals, advising the medical department, of which Dr. Emran is the primary physician, that he was suffering "constant flares" and that he had yet to see a gastroenterologist. Arnette also provides two affidavits from inmates who attest that they witnessed Arnette suffering stomach pain and uncontrolled bowel movements that affected his ability to perform his job and interfered with his quality of life. Arnette's allegations of repeated instances of severe stomach pain and uncontrolled bowel movements which he suffered during the delay in seeing a specialist constitute a sufficient showing of "substantial harm."

Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Arnette, I find that Arnette's complaint states a plausible claim for relief against Dr. Emran. Accordingly, I will deny Dr. Emran's motion to dismiss.

## V. Preliminary Injunctive Relief

In his prayer for relief, Arnette asks the court for a "preliminary and permanent injunction" ordering defendants to provide, as needed, local and timely specialist care, medications, annual colonoscopy exams, and any additional care or procedures as recommended by a specialist. However, Arnette has now been transferred to Greensville Correctional Center and, therefore, his requests for injunctive relief are moot.

The jurisdiction of federal courts is limited to live cases or controversies. U.S. Const. art. III, § 1. When a claim no longer presents a viable legal issue to resolve, the claim becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claim(s) must be dismissed as moot. *Blanciak v. Allegheny Ludlum Co.*, 77 F.3d 690, 698-99 (3d Cir. 1996). The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (prisoner's transfer rendered moot his claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered moot his claim for injunctive relief); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (holding that transfer made moot claim for injunctive relief); *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

In this case, because Arnette has been transferred to Greensville Correctional Center, he no longer requires a preliminary injunction against the defendants. Accordingly, I find that

Arnette's claims for preliminary injunctive relief are now moot.

## VI.

For the reasons stated, I will grant Armor Health's motion to dismiss, deny Dr. Emran's motion to dismiss, and deny Arnette's request for a preliminary injunction.[9]

The Clerk of the Court is directed to send copies of this memorandum opinion and the accompanying order to the parties.

**ENTER**: This 24th day of September, 2013.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] Arnette has also filed a motion to amend (Docket No. 66) and a motion for a temporary restraining order (Docket No. 65); however, I will address these motions by separate order.